UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **JOHN W. BARTLETT, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v.                              } | Case No.: 1:10-cv-01620-MHH |
| } | |
| **DENNIS PRESTON, et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This is the final chapter in a prolonged business dispute among friends. This opinion disposes of a fraudulent transfer claim against the estate of Jack Norton.[1] For the reasons stated below, the Court enters judgment in favor of the estate.

## I.   PROCEDURAL BACKGROUND AND RELEVANT FACTS

For a number of years, John and Barbara Bartlett have been working to recover the $400,000 that they invested in a propane gas business that the Bartletts' friends, Dennis and Joan Preston, owned and operated. Toward that end, the Bartletts filed this lawsuit. Responding to a motion for summary judgment, the Court held that the Bartletts and the Prestons never formalized their business relationship with an enforceable contract, but the Bartletts were entitled to recover

---

[1] Mr. Norton died on November 1, 2014. (Doc. 171). On April 16, 2015, the Court substituted Janie Sue Norton, as the personal representative of the Estate of Jackson Enoch Norton, as a party defendant in place of defendant Jackson Norton. (Doc. 190).

1

some of their investment via their equitable claim for money had and received. (*See* Docs. 135, 136). Before the Court scheduled a hearing to determine the amount that the Bartletts were entitled to recover under their equitable claim, the Barletts and DAAK, Inc., the corporation through which the Prestons operated their propane business, filed a joint motion for entry of a $400,000.00 consent judgment. (Docs. 158, 158-1).[2] On September 2, 2014, pursuant to a joint stipulation and general release, the Court entered judgment in the amount of $400,000.00 against DAAK, Inc. on the Bartletts' claim for money had and received. The Court dismissed with prejudice all claims against DAAK, Inc. d/b/a D&S Propane. (Doc. 160).

Obtaining the judgment was one thing; collecting the judgment was another. DAAK and its predecessor corporation, D&S Propane, Inc., were largely without assets or income. Through a series of negotiations, the Bartletts received from DAAK the assets of the corporation that had some value. (Doc. 158-1, pp. 2-3). In addition, the Bartletts pursued fraudulent transfer claims against a number of the Prestons' relatives. This opinion concerns one of those fraudulent transfer claims.

The record demonstrates that over time, the Prestons mingled D&S and DAAK's assets with their personal assets. The Prestons continued to blur the line

---

[2] Had the Court held a hearing on damages on the Bartletts' claim for money had and received, the Bartletts would not have recovered their entire $400,000 investment because it is undisputed that the Prestons used some of the Bartletts' investment in the propane business for legitimate business purposes.

between business and personal funds after the Bartletts invested their $400,000 in the Prestons' propane business. Although the Prestons used some of the Bartletts' funds to pay for legitimate business expenses, the Prestons also used some of the Bartletts' money to retire personal debt and satisfy loans for various members of the Prestons' family. Through negotiations to resolve the Bartletts' fraudulent transfer claims against these family members, the Bartletts recovered more than $69,000.[3]

Jack Norton is the one member of the Prestons' extended family who refused to negotiate with the Bartletts. He denied the Bartletts' fraudulent transfer claim and asked the Court to set that claim for hearing. The Bartletts' claim against Mr. Norton pertains to $25,000 that Dennis Preston paid to Mr. Norton to retire a $25,000 loan that Mr. Norton made to D&S. Following Mr. Norton's death, the Court held a bench trial on the Bartletts' fraudulent transfer claim against Mr. Norton.[4] Counsel for the Bartletts and Mr. Norton's estate stipulated to

---

[3] On December 29, 2014, the Court ordered Joan Preston to release, assign, and transfer a $52,000 annuity contract to the Bartletts. (Doc. 174). On February 24, 2015, consistent with a joint motion, the Court entered judgment in the amount of $8,871.75 in favor of the Bartletts on their fraudulent transfer claims against Scotty Preston, and the Court dismissed those claims with prejudice. (Doc. 179). On March 19, 2015, with Malisa Dunson's consent, the Court entered judgment in the amount of $3,245.16 in favor of the Bartletts on their fraudulent transfer claims against Ms. Dunson, and the Court dismissed those claims with prejudice. (Docs. 181, 185). The Bartletts settled their fraudulent transfer claim against Brenda Preston for $5,252.83, and the Court dismissed that claim with prejudice on June 23, 2015. (Docs. 203, 204).

[4] A court reporter was present at the May 19, 2015 bench trial. A transcript of the proceeding is available upon request. The Court cites to the transcript as Tr. followed by the page number.

entry of a number of exhibits and agreed that the Court could resolve the Bartletts' claim against Mr. Norton's estate based on those exhibits and the parties' legal argument.

The record demonstrates that in November 2005, Mr. Norton loaned D&S Propane, Inc. $25,000. (Doc. 93-1, p. 12). D&S Propane used the money to buy 100 propane tanks for the propane business. (Doc. 93-1, p. 12). In November 2005, Mr. Norton and D&S Propane, Inc. prepared but did not sign a written agreement memorializing the terms of the $25,000 loan. (Doc. 93-1, p. 12; Def. Ex. 1).[5] The Prestons did not keep up with the principal payments described in the unsigned promissory note; however, the Prestons made monthly interest payments on the loan until 2009, and Mr. Preston repaid the principal balance of the loan in October 2009. (Doc. 93-1, pp. 13-14; Def. Ex. 2; Def. Ex. 3). Mr. Preston repaid the $25,000 loan in cash. (Doc. 93-1, p. 13).

On this record, the Court evaluates the Bartletts' fraudulent transfer claim against Mr. Norton's estate.

## II.   DISCUSSION

The Alabama Fraudulent Transfer Act governs the Bartletts' claim against Mr. Norton's estate. The Act provides four statutory grounds for recovery of fraudulently transferred assets: Alabama Code §§ 8-9A-4(a), 8-9A-4(c), 8-9A-

---

[5] The Court cites to the parties' exhibits from the May 19, 2015 bench trial as Pl. Ex. and Def. Ex. followed by the exhibit number.

5(a), and 8-9A-5(b). Section 8-9A-4(a) provides: "A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor." Ala. Code § 8-9A-4(a). Section 8-9A-8(a) adds: "A transfer is not voidable under Section 8-9A-4(a) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee who took in good faith." Ala. Code § 8-9A-4(a). Section 8-9A-4(c) provides:

> A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor:
>
> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Ala. Code § 8-9A-4(c). Section 8-9A-5(a) provides:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer.

Ala. Code § 8-9A-5(a). Finally, Section 8-9A-5(b) provides:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt and the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

Ala. Code § 8-9A-5(b).

The Bartletts concede that they cannot recover under Sections 8-9A-4(a), 8-9A-4(c), or 8-9A-5(a) if Mr. Norton provided reasonably equivalent value in exchange for the $25,000 that Mr. Preston paid Mr. Norton. (Tr. pp. 51-52). The Bartletts also concede that they cannot recover under Section 8-9A-5(b) if Mr. Norton did not have reasonable cause to believe that D&S Propane was insolvent when Mr. Preston repaid the $25,000. (Tr. pp. 51-52). Therefore, the Court turns its attention to these issues.

### A. Alabama Code §§ 8-9A-4(a), 8-9A-4(c), 8-9A-5(a) – Reasonably Equivalent Value

The Bartletts cannot recover from the Norton estate under Sections 8-9A-4(a), 8-9A-4(c), or 8-9A-5(a) because the record establishes that Mr. Norton provided reasonably equivalent value in exchange for the $25,000 that Mr. Preston transferred in October 2009.[6] The Bartletts acknowledge that Mr. Norton loaned D&S $25,000, but they argue that because Mr. Preston repaid the loan using funds

---

[6] Under the Alabama Fraudulent Transfer Act, "[v]alue is given for a transfer if, in exchange for the transfer, property is transferred or an antecedent debt is secured or satisfied. . . ." Ala. Code § 8-9A-3.

6

from his personal account, a fact that is not disputed, the $25,000 payment from Mr. Preston to Mr. Norton cannot be linked to Mr. Norton's $25,000 loan to D&S. (*See* Doc. 93-1, pp. 13, 16, 24). The Court is not persuaded.

The record demonstrates that for all intents and purposes, D&S was DAAK; DAAK was D&S; and the Prestons were the alter-ego of both corporations. Admittedly, DAAK, Inc. and D&S Propane, Inc. are two distinct legal entities pursuant to documents of incorporation on file with the Alabama Secretary of State. (Tr. 35; Def. Ex. 15 and 16). But the Prestons operated the two corporations interchangeably and subscribed to no corporate formalities with respect to either company. (Tr. p. 39). The Prestons sometimes deposited company money into their personal accounts, sometimes paid for personal expenses out of business accounts, and sometimes paid business expenses from their personal accounts. (Doc. 93-1, pp. 13, 16, 24; Pl. Ex. 1).

There is no better evidence of these blurred lines than the circumstances surrounding the Bartletts' investment in the Prestons' propane business. The Bartletts issued five checks totaling $400,000 between March 2009 and August 2009. (Doc. 93-6, pp. 2-6). Dennis Preston is the payee on four of the checks; one check names "D&S Propane" as the payee. (Doc. 93-6, pp. 2-6). Dennis Preston provided hand-written receipts for the payments. (Doc. 93-6, p. 7). Two of the receipts state that the payment is for "½ of D&S Propane." Another states that the

payment is for "½ of propane business." (Doc. 93-6, p. 7). The Prestons deposited the Bartletts' first, third, fourth, and fifth checks into their joint personal checking account. (Doc. 93-1, pp. 16, 33; Doc. 93-4, p. 2-3; Pl. Ex. 1). The Prestons deposited the Bartletts' second check into a DAAK business account. (Doc. 93-4, p. 2; Pl. Ex. 1).

Thus, the record demonstrates that everyone involved in these business transactions among friends and family, including the Bartletts, made no distinction between the Prestons' personal and business accounts. The Court will not demand corporate formalities of parties who failed to recognize or follow those formalities themselves, particularly when the genesis of this attempted recovery is a judgment based on the equitable theory of money had and received.[7] Despite the muddy waters resulting from the Prestons' failure to keep their personal and business funds separated, the record reflects that Mr. Norton provided reasonably equivalent value in exchange for the $25,000 that Mr. Preston transferred in October 2009. The record also demonstrates that the Prestons used the money borrowed from Mr.

---

[7] Significantly, the Bartletts made no effort to protect their interests. Ignoring the requirements of due diligence, the Bartletts did not ask to review D&S's books before they invested in the company. The Bartletts did not demand a written contract before investing in the Prestons' propane business. (Doc. 101-1, pp. 8-10). Mr. Bartlett made no attempt to understand stock ownership or any other essential aspect of the business in which he invested before he agreed to partner with the Prestons. (Doc. 101-1, p. 14).

Norton to buy propane tanks. (Doc. 93-1, p. 12). This was not an inside family deal; it was not a fraudulent conveyance.[8]

### B. Alabama Code § 8-9A-5(b) – Knowledge of Insolvency

The Bartletts cannot recover from the Norton estate under section 8-9A-5(b) because they have not demonstrated that Mr. Norton knew that D&S Propane was insolvent when Mr. Preston repaid the $25,000 loan. It is undisputed that DAAK/D&S and the Prestons had debts greater than all of their assets at fair valuation when Mr. Preston repaid the loan in October 2009, (Doc. 93-3, p. 5; Pl. Ex. 20); but the Bartletts have not demonstrated that Mr. Norton was aware of that fact.

In support of their attempt to recover under section 8-9A-5(b), the Bartletts argue that Mr. Norton should have known that DAAK/D&S was insolvent because neither D&S nor the Prestons made a principal payment on the $25,000 loan until Mr. Preston repaid the entire $25,000 in October 2009, and the Prestons stopped making interest payments in July of 2009. (Tr. pp. 53-54). It is too much of a stretch to infer from this evidence that Mr. Norton knew or reasonably should have

---

[8] The Bartletts contend that because no one signed the November 2005 promissory note on D&S's behalf, the debt evidenced by the note is invalid under the statute of frauds and, therefore, cannot serve as a legitimate antecedent debt. (Tr. p. 39). Again, the Court is not persuaded. The Prestons ratified the debt by making monthly interest payments on the loan, and Mr. Norton accepted those payments. The Prestons and Mr. Norton treated the loan as a legitimate, legal obligation. Given the equitable considerations at play in this action, strict application of the statue of frauds is inappropriate.

known that the Prestons and/or DAAK/D&S was insolvent in October 2009. And such an inference is contradicted by evidence that indicates that Mr. Norton had no facts, documents, or communications relating to the financial condition of D&S, DAAK, or the Prestons. (Pl. Ex. 6, p. 8). Before his death, Mr. Norton explained in response to the Bartletts' discovery requests that Mr. Preston gave no explanation for why Mr. Preston wanted to repay the $25,000 in October 2009. (Pl. Ex. 6, p. 7). On this record, the Court cannot conclude that Mr. Norton had reasonable cause to believe that D&S, DAAK, or the Prestons were insolvent in October 2009.

### C. Post-script

Had the Court been tasked with determining the amount of money that the Bartletts could recover under their equitable claim for money had and received, the Court would consider evidence that indicates that the Prestons spent at least $140,000 (and possibly as much as $250,000) of the Bartletts' $400,000 on legitimate business expenses. (*See* Doc. 135, pp. 10-14; Pl. Ex. 1). The Court also would consider the fact that the Bartletts have recovered more than $69,000 from the Prestons' relatives. The Court would receive evidence about the value of the DAAK/D&S assets that have been transferred to the Bartletts (e.g., propane tanks, D&S's customer list, and the good will associated with the propane business) and the consideration that the Bartletts received for transferring half of their interest in

DAAK/D&S to a third party.[9]  The Court also would examine the amount of money that the Prestons reasonably could have taken from the propane business as salary for running the business.  Although there is no need for the Court to evaluate these issues before closing the case, the Court observes that the interests of equity have been served in this case.

## III.   CONCLUSION

For the reasons discussed above, the Court finds that the Bartletts may not recover the $25,000 that Mr. Preston paid to Mr. Norton to satisfy a legitimate business loan.  The Court enters judgment in favor of the Norton estate on the Bartletts' fraudulent transfer claim against Mr. Norton.  The Court will enter a separate order dismissing this claim with prejudice and directing the Clerk to please close this file.

**DONE** and **ORDERED** this September 29, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[9] The Bartletts' attorney has represented that the Bartletts received no money for transferring half of their interest in the propane business, but the Court has not heard testimony or received evidence on this issue.